**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YOHANCE LACOUR, CAROL MARIN, PHILIP ROGERS, ROBIN AMER, LINDSEY DORCUS, and VICTORIA NASSIF, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>*Defendant*. | Case No. 1:26-cv-05536<br><br>Judge Sharon Johnson Coleman |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendant*
*Apple Inc.*

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 3

I. Apple builds voice-synthesis technology for the benefit of users. ........ 3

II. "Non-users" of Apple's voice-synthesis products claim Apple used their voices to build those products. ........ 3

III. Plaintiffs assert that Apple violated Illinois law. ........ 4

ARGUMENT ........ 4

I. This Court should dismiss the complaint because it lacks personal jurisdiction over Apple. ........ 4

II. The complaint should be dismissed under Rule 12(b)(6) because plaintiffs do not plausibly allege Apple used their recordings. ........ 7

III. Plaintiffs impermissibly seek to apply Illinois law extraterritorially. ........ 11

- A. For purposes of the extraterritoriality inquiry, courts examine the location of the *defendant's* conduct. ........ 11
- B. Plaintiffs do not allege that Apple took any actions in Illinois. ........ 14
- C. Plaintiffs cannot manufacture a connection to Illinois by claiming their data persists in Apple's products. ........ 15

IV. Plaintiffs' BIPA claims should also be dismissed because they have not pleaded facts bringing Apple's conduct within the narrow ambit of the statute. ........ 17

- A. Plaintiffs do not plausibly allege the creation of data subject to BIPA. ........ 17
  - 1. Plaintiffs do not plausibly allege the creation of vocal data that can be used to identify them. ........ 18
  - 2. Plaintiffs do not plausibly allege that any uniquely identifying vocal data was linked to their identities. ........ 20
- B. Because plaintiffs allege a misuse of technology, not their data, they have not stated a claim under BIPA Sections 15(c), (d), and (e). ........ 22

V. Plaintiffs' remaining claims should be dismissed for additional reasons. ........ 24

- A. Plaintiffs have not stated a claim under the Illinois Right of Publicity Act. ........ 24
  - 1. Plaintiffs do not allege that Apple's purported use of their voices was sufficient to identify them to a reasonable audience. ........ 24
  - 2. Plaintiffs do not allege Apple used their identities to sell anything. ........ 26
- B. Plaintiffs have not stated a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. ........ 26
  - 1. The ICFA protects consumers, but plaintiffs have alleged they are not consumers of Apple products. ........ 27
  - 2. Plaintiffs have not pleaded an unfair or deceptive business practice, let alone with the requisite particularity ........ 28

C. Plaintiffs fail to state a claim under the Illinois Uniform Deceptive Trade Practices Act. .......... 29
D. Plaintiffs fail to state a claim for unjust enrichment. .......... 30
CONCLUSION .......... 30

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AbbVie Inc. v. Payer Matrix, LLC*,
2025 WL 2374490 (N.D. Ill. Aug. 15, 2025) ....27

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....11, 30

*Alonso v. Blue Sky Resorts, LLC*
179 F. Supp. 3d 857 (S.D. Ind. 2016) ....8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....8

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100, 835 N.E.2d 801 (2005) ....11, 12, 15

*Azuz v. Accucom Corp.*,
2025 WL 2807653 (N.D. Ill. Oct. 2, 2025) ....11

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ....6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....7

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) ....5, 6, 7, 8, 9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)) ....5

*Campana v. Nuance Commc'ns, Inc.*,
2024 WL 2809838 (N.D. Ill. Mar. 8, 2024).... 11, 12, 13, 14

*CardioNet, Inc. v. LifeWatch Corp.*,
2008 WL 567031 (N.D. Ill. Feb. 27, 2008) ....30

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ....17, 19

*Castelaz v. The Estee Lauder Cos., Inc.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ....18, 21, 22

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023) ....................................................................18, 21

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ................................................................................11

*Daichendt v. CVS Pharmacy, Inc.*,
2022 WL 17404488 (N.D. Ill. Dec. 2, 2022))....................................................17, 18, 21, 22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................................................................5

*Darne v. Ford Motor Co.*,
2015 WL 9259455 (N.D. Ill. Dec. 18, 2015)...................................................................29, 30

*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) ......................................................16, 23, 24

*Dobrowolski v. Intelius, Inc.*,
2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ..................................................................25, 26

*Dolemba v. Kelly Servs., Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ...........................................................................28

*Faxel v. Wilderness Hotel & Resort, Inc.*,
2019 WL 6467317 (N.D. Ill. Dec. 2, 2019)........................................................................5, 6

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
2021 WL 6049964 (N.D. Ill. Dec. 21, 2021).........................................................................11

*Flores v. Motorola Sols., Inc.*,
2021 WL 232627 (N.D. Ill. Jan. 8, 2021)................................................................................16

*Garvey v. Citizens for Rauner, Inc.*,
2020 WL 13512715 (N.D. Ill. Sept. 3, 2020) .................................................................27, 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...........................................................................................................4, 5

*G.T. v. Samsung Elecs. Am.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) .......................................................17, 18, 21, 22, 23

*G.T. v. Samsung Elecs. Am.*,
--- F.4th ----, 2026 WL 2279903 (7th Cir. Aug. 7, 2026)...........................................................9

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)................................................................................................................16

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ....10

*Hooks v. CloudSpotter Techs. Inc.*,
2026 WL 1045734 (N.D. Ill. Apr. 17, 2026) ....18, 19

*Huston v. Hearst Commc'ns, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ....24, 26

*Illinois v. Hemi Group, LLC*,
622 F.3d 754 (7th Cir. 2010)) ....6

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. 2023) ....18, 21, 22

*Marchman v. Kovel-Fuller*,
2007 WL 9811116 (N.D. Ill. July 9, 2007) ....25

*Martell v. X Corp.*,
2024 WL 3011353 (N.D. Ill. June 13, 2024) ....18, 20

*McGoveran v. Amazon Web Servs., Inc.*,
175 F.4th 434 (3d Cir. 2026) ....12

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ....11, 12

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010)) ....5

*Morley-Murphy Co. v. Zenith Elecs. Corp.*,
142 F.3d 373 (7th Cir. 1998) ....16, 17

*Patel v. Zillow, Inc.*,
2018 WL 2096453 (N.D. Ill. May 7, 2018) ....27, 28

*Precision Cam, Inc. v. Fox & Fox*,
2015 WL 803552 (S.D. Ind. Feb. 24, 2015) ....29

*Segerdahl Corp. v. Ferruzza*,
2019 WL 77426 (N.D. Ill. Jan. 2, 2019) ....10

*Seigal v. Geico Casualty Co.*,
523 F. Supp. 3d 1032 (N.D. Ill. Mar. 4, 2021) ....29

*Slafter v. Haier US Appliance Sols., Inc.*,
605 F. Supp. 3d 1102 (S.D. Ill. 2022) ....29

*Stein v. Clarifai, Inc.*,
526 F. Supp. 3d 339 (N.D. Ill. 2021) ....................6

*Stein v. Clarifai*,
No. 22-cv-314 (D. Del. Nov. 21, 2022) ....................11, 12, 13, 15

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) ....................7, 8, 9, 21

*Tagliere v. Horseshoe Hammond, LLC*,
2023 WL 3886135 (N.D. Ill. June 8, 2023) ....................5

*Vance v. Amazon.com, Inc.*,
2022 WL 12306231 (W.D. Wash. Oct. 17, 2022) ....................14, 16

*Vance v. Amazon.com Inc.*,
534 F. Supp. 3d 1314 (W.D. Wash. 2021)....................15, 16, 23

*Vance v. Google LLC*,
2024 WL 1141007 (N.D. Cal. Mar. 15, 2024)....................11, 12, 13, 14

*Vance v. Microsoft Corp.*,
2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) ....................14, 15

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021)....................16, 23, 24

*In re Ventra Card Litig.*,
2015 WL 1843044 (N.D. Ill. Apr. 21, 2015) ....................28, 29

*Walden v. Fiore*,
571 U.S. 277 (2014)) ....................5, 6, 7

*Whittler v. Midland Funding, LLC*,
2015 WL 3407324 (N.D. Ill. May 27, 2015) ....................28

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008) ....................29

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) ....................8

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ....................18, 19, 21, 22

**STATUTES**

740 Ill. Comp. Stat. 14/15(c)-(e)....................17, 22, 23, 24

765 Ill. Comp. Stat. 1075/30(a) ....................24

765 Ill. Comp. Stat. 1075/30(b) ....................26

765 Ill. Comp. Stat. 1075/5....................25, 26

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014)) ....................17

Public Access Opinion No. 17-011, 2017 WL 10084298 (Ill. A.G. Aug. 14, 2017)....................17

## INTRODUCTION

Plaintiffs are six Illinois residents who claim that because their voice recordings exist somewhere on the internet, Apple must have downloaded and used those recordings in unlawful ways. Plaintiffs speculate "on information and belief" that because Apple has an internet connection and offers voice-synthesis products, it must have scraped plaintiffs' recordings from the internet; must have used "metadata-extraction tools" to collect plaintiffs' metadata, including data identifying their names; must have matched those recordings with their names; and must have created plaintiff-specific voiceprints that now "persist" in commercial products like Siri. Based on all this speculation, plaintiffs claim Apple violated the Illinois Biometric Information Privacy Act ("BIPA") and other state laws. Their complaint should be dismissed for five reasons.

*First*, this Court lacks personal jurisdiction over Apple. The Court lacks general jurisdiction because Apple is not at home in Illinois. It also lacks specific jurisdiction because plaintiffs have failed to plead Apple's suit-related conduct is connected to Illinois. Plaintiffs cannot rely on their own Illinois residency to establish this connection.

*Second*, plaintiffs have not alleged facts that are enough to raise a right to relief above the speculative level. They allege only that their recordings are available on the internet; they do not offer any facts to support an inference that Apple *used* those recordings to train its technology. Courts routinely dismiss complaints just like this one—including in BIPA cases—that depend on a mere guess that a plaintiff's data may have been used to train the defendant's technology.

*Third*, there is an extraterritoriality problem. Plaintiffs' claims all require Apple's alleged misconduct to have happened in Illinois. Plaintiffs allege they "produced" their recordings in Illinois, but they do not allege *Apple* did anything relevant there. Courts have seized on that same deficiency to dismiss complaints in BIPA cases alleging that the plaintiffs' recordings or images were *created in* Illinois but *used* elsewhere, including to train technology.

*Fourth*, plaintiffs' BIPA claims fail because they have not plausibly alleged the most important part of a BIPA claim: that Apple created biometric data that made it capable of determining their identities. To satisfy that standard, plaintiffs must plausibly allege Apple both (1) created biometric data that its technology could use to recognize their voices and (2) actually linked that data to their real-world identities (only then would Apple be capable of identifying them using the data). But they do not plausibly allege any facts showing Apple's training process necessarily involves the creation of data that could be used to identify them. Nor do they plausibly allege Apple was *able* to connect their recordings to their names or that it *actually* did.

*Finally*, each of plaintiffs' remaining claims likewise fails for independent reasons beyond the cross-cutting problems discussed above. For example, plaintiffs do not state a claim under the Illinois Right of Publicity Act ("IRPA") because they do not allege Apple used their voices in a way that could identify them to a reasonable audience. They also do not state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") because they specifically allege they did *not* use Apple products and thus were not consumers (or acting like consumers).

Plaintiffs cannot state any of their claims because they have no plausible basis for inferring that Apple took their voice recordings, created voiceprints from them, and then used those voiceprints to train its products. That is why in addition to suing Apple they sued eight other major technology companies with nearly verbatim complaints alleging these companies also trained voice technologies with plaintiffs' publicly available voice recordings. Plaintiffs' speculation that someone, somewhere, must have used their voice recordings cannot support plaintiffs' claims against Apple, and this case should be dismissed with prejudice.

## BACKGROUND

### I. Apple builds voice-synthesis technology for the benefit of users.

"[V]oice synthesis technology" allows devices to "speak in synthetic human voices." Compl. ¶ 2. Apple incorporates such technology into certain products it offers to users, including Siri and Personal Voice. *Id.* ¶ 35. Apple offers these products subject to "an extensive consent and rights infrastructure for the biometric and voice data of its users." *Id.* ¶ 43.

### II. "Non-users" of Apple's voice-synthesis products claim Apple used their voices to build those products.

Yohance Lacour, Carol Marin, Philip Rogers, Robin Amer, Lindsey Dorcus, and Victoria Nassif are journalists, podcasters, audiobook narrators, and voice actors, whose voice recordings are "publicly available" on various online platforms like nbcchicago.com, Compl. ¶ 87 (Rogers), mediaburn.org, news.wttw.com, *id.* ¶ 84 (Marin), Libro.fm, *id.* ¶ 96 (Nassif), Apple Books, and Spotify, *id.* ¶ 93 (Dorcus). They do not claim to have ever used any Apple products incorporating Apple's voice-synthesis technology; to the contrary, they allege they are "non-users" of those products. *Id.* ¶ 75. But they have sued Apple on the theory, pleaded "[o]n information and belief," that Apple "took" their publicly available "voice recordings" and used them to "build" and "train[ ]" its voice-synthesis technology for use in those products. *Id.* ¶¶ 4, 55, 76.

Plaintiffs allege "[o]n information and belief" that Apple's efforts to build voice-synthesis technology would have required "training corpora [of] tens of thousands of hours of speech from tens of thousands of distinct speakers" sourced from "publicly available audio platforms," like YouTube, Apple Podcasts, and Apple Books. Compl. ¶ 55. Plaintiffs also allege that voice recordings on which their voices appear "match[ ] the profile of [the] . . . audio" that would have been "optimal" for "training." *Id.* ¶ 76. As a result, plaintiffs allege, again "[o]n information and belief," that "the voice recordings of each plaintiff were among the audio that Apple ingested to

train its foundational voice synthesis models." *Id.* With one exception, plaintiffs do not identify any specific recordings that Apple used to train its technology. *See id.* ¶ 54. The exception is the "LibriTTS dataset," and plaintiffs do not allege they were among the 1,000 volunteers whose recordings were in that dataset. *Id.*

Finally, plaintiffs allege, once again "[o]n information and belief," that Apple "derived" plaintiffs' "voiceprints" (*i.e.*, the "distinctive acoustic characteristics" of their voices) from their publicly available voice recordings to "train" and develop its voice-synthesis products. Compl. ¶¶ 38, 76. They allege that these "voiceprints" do not exist as "discrete files," but rather are "encoded" into "the model weights" so as to "inform" all of the technology's "outputs." *Id.* ¶ 42.

## III. Plaintiffs assert that Apple violated Illinois law.

Plaintiffs bring claims under BIPA; IRPA; the ICFA; the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"); and for unjust enrichment. In the same week they filed this complaint, plaintiffs filed in this District substantially similar complaints against eight other companies that have allegedly developed voice-synthesis technologies.[1]

## ARGUMENT

## I. This Court should dismiss the complaint because it lacks personal jurisdiction over Apple.

This Court lacks personal jurisdiction over Apple because Apple is not at home in Illinois, and plaintiffs do not allege facts showing Apple's suit-related conduct is connected to Illinois. This omission alone warrants dismissal of the complaint.

A court can exercise general jurisdiction over an out-of-state defendant if it is "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

---

[1] *See* Case Nos. 1:26-cv-05436 (Alphabet); No. 1:26-cv-05491 (Microsoft); No. 1:26-cv-05497 (Amazon); No. 1:26-cv-05478 (Nvidia); No. 1:26-cv-05438 (Meta); No. 1:26-cv-05567 (Samsung); No. 1:26-cv-05575 (Adobe); No. 1:26-cv-05437 (Eleven Labs).

919 (2011). For corporations, this usually means their "place of incorporation" or "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, plaintiffs concede "Apple Inc. is a California corporation with its principal place of business in California." Compl. ¶ 21. Apple is "not at home in Illinois," and so this Court lacks general jurisdiction over it. *Tagliere v. Horseshoe Hammond, LLC*, 2023 WL 3886135, at *3 (N.D. Ill. June 8, 2023).

That leaves specific jurisdiction (the only other form of personal jurisdiction). *Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727, at *7 (N.D. Ill. Aug. 6, 2024). "Specific jurisdiction exists 'when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities.'" *Id.* (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010)). "The Court looks to the 'defendant's suit-related conduct' and its connection to the forum state; 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

Plaintiffs do not allege the minimum contacts necessary to support specific jurisdiction. Plaintiffs first say that Apple operates "retail locations throughout the State" and that it sells "Apple-branded products and accessories to Illinois residents through those retail stores." Compl. ¶ 24. But to support specific jurisdiction, plaintiffs' claims must "'arise out of or relate to' [Apple's] contacts" with Illinois. *Faxel v. Wilderness Hotel & Resort, Inc.*, 2019 WL 6467317, at *3 (N.D. Ill. Dec. 2, 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). There are no allegations plaintiffs ever visited or interacted with anyone at these retail locations, no allegations Apple scanned their voices there, no allegations Apple created voiceprints there, no allegations Apple developed its voice-synthesis products there, etc. "[P]laintiffs have made no showing . . . that [the stores] form[] any part of the injury-causing misconduct itself," and

so this Court lacks specific jurisdiction. *Faxel*, 2019 WL 6467317, at *3; *see also Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344 (N.D. Ill. 2021) (defendant's contacts with the forum state must come from its "suit-related activity"); *Brantley*, 2024 WL 3673727, at *7 (same).

Next, plaintiffs say Apple "accepts recurring payments from Illinois subscribers for" various online services like "Apple Music, Apple TV+, [and] Apple Fitness+." Compl. ¶ 24. But the Seventh Circuit has cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (quoting *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). Plaintiffs allege only that Apple operates various online services that are accessible from Illinois, as well as from every other state. This allegation also cannot support specific jurisdiction. *Id.* at 559; *see also Brantley*, 2024 WL 3673727, at *7 (same).

The rest of plaintiffs' jurisdictional allegations concern Apple's "contacts with persons who reside [in Illinois]"—all of which, "standing alone, [are] an insufficient basis for jurisdiction." *Brantley*, 2024 WL 3673727, at *7 (quoting *Walden*, 571 U.S. at 283, 285). Plaintiffs allege (1) that "Apple collected . . . voiceprints[] from voice recordings of *Illinois residents*"; (2) that it incorporated *Illinois residents'* "voiceprints" into its commercial products and "delivered [them] to *Illinois customers*"; (3) that it "exploit[ed] the voices and identities of *Illinois residents*"; and (4) that it "disseminate[d] . . . biometric data derived from *Illinois residents'* voice recordings[] across its corporate infrastructure." Compl. ¶¶ 25–28 (emphasis added). These allegations are no different from those the court deemed insufficient in *Brantley*. 2024 WL 3673727, at *7. There, the plaintiff asserted BIPA claims against the defendant, alleging it used a database containing

photos scraped from the internet (including his) to train its app. 2024 WL 3673727, at *1–2. The plaintiff claimed the court had personal jurisdiction because "he [was] an Illinois resident, uploaded photos from Illinois, and was in Illinois when he did not receive disclosures or provide consent." *Id.* at *7. The court held "this argument [was] foreclosed by *Walden*," where the Supreme Court held that the minimum-contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at *7 (quoting 571 U.S. at 285). Because plaintiffs here are the only link between Apple and Illinois, this Court lacks specific jurisdiction over Apple.

Plaintiffs tried six times to connect Apple's conduct to Illinois and failed all six times. Compl. ¶¶ 24–28. They should not be given another chance. The complaint should be dismissed without leave to amend.

## II. The complaint should be dismissed under Rule 12(b)(6) because plaintiffs do not plausibly allege Apple used their recordings.

Plaintiffs have alleged no plausible facts showing Apple used their recordings to train its technologies. They have plausibly alleged only that their voice recordings can be found on the internet and that Apple—like anyone else in the world with an internet connection—could have accessed those recordings. *See* Compl. ¶¶ 84, 90. But the key allegation—that Apple actually used their recordings in an unlawful way—is pleaded "[o]n information and belief." *Id.* ¶ 76. Because plaintiffs' claims are based on "unsupported conclusory factual allegations," this Court should dismiss them for failure to state a claim. *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 879–80 (N.D. Ill. 2014).

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "In such a case, the inference of liability is merely speculative," and the complaint should be dismissed. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Courts routinely dismiss complaints for failure to state a claim when plaintiffs speculate that the defendant *must have* received or misused their data. In *Strautins*, for example, the plaintiff alleged her data must have been compromised in a hack because (1) an entity had her data and (2) that entity was hacked, but those allegations did not provide a sufficient "basis to infer that the hacker (or hackers) obtained *her* data." 27 F. Supp. 3d at 880–81. Similarly, in *Alonso v. Blue Sky Resorts, LLC*, the plaintiffs alleged the defendant suffered a data breach but did not plausibly allege that their "credit card information was actually obtained by the hackers[ ]." 179 F. Supp. 3d 857, 859, 862 (S.D. Ind. 2016). There were no allegations, for example, that "their credit card accounts ever had any fraudulent charges made on them." *Id.* at 862. Accordingly, the court dismissed the complaint under 12(b)(6) because plaintiffs' allegations did not establish a "right to relief above the speculative level." *Id.* at 865. Finally, in *Brantley* , the court rejected the plaintiff's claim, pleaded "on information and belief," that the defendant "used his photos to train" its technology, even though the plaintiff claimed he "regularly use[d] various social-media platforms" from which photos used for training were undisputedly sourced. 2024 WL 3673727, at *1–2, 5–6. At best, the plaintiff's claims were merely consistent with the defendant's liability and therefore insufficient to support an entitlement to relief. *Id.* at *6.

So too here. Plaintiffs claim "[o]n information and belief" that Apple ingested their data for training, Compl. ¶ 55, but "that is a conclusion in need of factual support." *Strautins*, 27 F. Supp. 3d at 880. Plaintiffs do not plead, for example, that Apple's so-called "training pipeline,"

Compl.¶ 4, ingested their specific recordings from the various publicly available platforms they mention, much less that their recordings were thereafter actually used for training. *See Brantley*, 2024 WL 3673727, at *6. In other words, plaintiffs' "complaint rests entirely on the assumption" that Apple obtained and then used their data to build its voice-synthesis products, but that is insufficient under Rule 8, and the claims should be dismissed. *Strautins*, 27 F. Supp. 3d at 880; *see also Alonso*, 179 F. Supp. 3d at 862, 865 (dismissal warranted where plaintiffs did not plausibly allege hackers "actually obtained" their data); *Brantley*, 2024 WL 3673727, at *5–6 (same, where plaintiff did not plausibly allege defendant "used any of his information or photos").

Plaintiffs cannot avoid the strictures of Rule 8 by claiming that whether Apple used their recordings is information "within Apple's exclusive control." Compl. ¶ 77. The Seventh Circuit recently rejected this very argument in *G.T. v. Samsung Elecs. Am.*, --- F.4th ----, 2026 WL 2279903 (7th Cir. Aug. 7, 2026). There, the plaintiffs alleged Samsung provided an app that scanned their photos and created templates of their faces. *Id.* at *2. Because users had the ability to "back up their photos to Samsung's cloud servers," the plaintiffs speculated the templates were "also backed up" and that Samsung "possesse[d]" their biometric information in violation of BIPA. *Id.* at *5–6. But the fact that users could upload their photos to Samsung's servers did "not necessarily" mean the templates were also uploaded in the process. *Id.* at *6. And while it was true that "technology companies such as Samsung have significantly more information about their proprietary systems and software than everyday consumers," this reality did not relieve plaintiffs of their "burden . . . to plausibly state a cause of action that [could] withstand judicial scrutiny," and the Seventh Circuit affirmed dismissal of plaintiffs' BIPA complaint. *Id.* at *6.

Plaintiffs should not be excused from meeting their burden either. Like the plaintiffs in *Samsung*, they "do not provide any plausible support for [their] theory" that Apple used their

specific voice recordings in its voice-synthesis products. *Id.* at 13. Nor do they point to anything that triggered their suspicion that Apple did so, such as an instance of Apple's technology generating *their* specific voices. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020). Here, plaintiffs identify only one source of recordings Apple used to train its technology—the "LibriTTS dataset"—but do not allege they donated their recordings to this dataset or that their recordings can be found there. Compl. ¶ 54.

The speculative premise of plaintiffs' theory against Apple is corroborated by the fact that plaintiffs filed, within days of their complaint in this case, substantially similar complaints against eight other large technology companies alleging—based on the same flawed logic—that those other companies must have used plaintiffs' voice recordings to train their voice technologies too. *See* footnote 1. In other words, plaintiffs have no basis to specifically allege that *Apple* did anything to harm them. Rather, plaintiffs claim that because recordings of them exist on publicly accessible platforms, *some* company *somewhere* with a voice technology *must have* used their specific recordings for training—but they do not know which company or when or where or how. By filing this shotgun set of similar complaints against nine different defendants, plaintiffs seek to evade the rule against "improper group pleading." *See Segerdahl Corp. v. Ferruzza*, 2019 WL 77426, at *6 (N.D. Ill. Jan. 2, 2019). Had plaintiffs filed one complaint against all nine companies, their claims would have been dismissed because there would have been "no factual allegations . . . directed at any of the [i]ndividual [d]efendants specifically." *Id.* This Court should not allow their claims to survive just because they went on nine separate fishing expeditions.

## III. Plaintiffs impermissibly seek to apply Illinois law extraterritorially.

Plaintiffs' claims under BIPA and other Illinois statutes also fail because those laws do not apply extraterritorially.[2] This means that plaintiffs can only invoke these statutory protections if the relevant circumstances "occurred primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 854 (2005). Courts thus dismiss complaints like this one that invoke these laws but do not allege a sufficient connection to Illinois, including in cases alleging the use of voice recordings to create voiceprints, *see, e.g.*, *Campana*, 2024 WL 2809838, at *2–3; *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021), and in cases alleging the creation of biometric data in connection with training a technology, *see, e.g.*, *Vance v. Google LLC*, 2024 WL 1141007, at *4 (N.D. Cal. Mar. 15, 2024); *Stein v. Clarifai*, No. 22-cv-314, Dkt. 29 at 21–27 (D. Del. Nov. 21, 2022). Plaintiffs' complaint should be dismissed on this ground as well.

### A. For purposes of the extraterritoriality inquiry, courts examine the location of the *defendant's* conduct.

"A plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4 (collecting cases). Yet the alleged connection between plaintiffs' claims and Illinois boils down to their status as Illinois residents. Compl. ¶¶ 14–19. Plaintiffs say they "recorded" and/or "produced" their recordings in Illinois, that those recordings thus had "metadata" indicating they were "produced by Illinois speakers in Illinois," and that the harm plaintiffs sustained as "Illinois persons" was

---

[2] *See Campana v. Nuance Commc'ns, Inc.*, 2024 WL 2809838, at *3 (N.D. Ill. Mar. 8, 2024) (BIPA); *Azuz v. Accucom Corp.*, 2025 WL 2807653, at *7 (N.D. Ill. Oct. 2, 2025) (IRPA); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (ICFA); *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 2021 WL 6049964, at *4 (N.D. Ill. Dec. 21, 2021) (IUDTPA); *see also A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *9 (N.D. Ill. Sept. 9, 2024) (holding unjust enrichment is not a separate cause of action and will rise and fall with related claims).

"localized" to "where those persons reside" in Illinois. Compl. ¶¶ 25, 60–62, 64. Such allegations "are nothing more than repeated statements . . . about Plaintiffs' residency" and are thus insufficient to ground a claim in Illinois. *McGoveran*, 2021 WL 4502089, at *4; *Google*, 2024 WL 1141007, at *4 (agreeing that such allegations are "little more than a proxy for Plaintiffs' residency"); *Campana*, 2024 WL 2809838, at *2–3 (similar).

As the Third Circuit recently recognized in a BIPA case, the question is "whether *[the defendant's] alleged misconduct* . . . 'occurred primarily and substantially in Illinois.'" *McGoveran v. Amazon Web Servs., Inc.*, 175 F.4th 434, 441 (3d Cir. 2026) (emphasis added) (quoting *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 854); *see also, e.g.*, *Clarifai*, No. 22-cv-314, Dkt. 29 at 23 (dismissing BIPA claims for lack of such allegations); *Google*, 2024 WL 1141007, at *4 (same). What matters is where the defendant acted, not where the consequences of its actions are *felt*. Thus, courts have rejected the argument that a defendant's alleged "fail[ure] to provide notice to and obtain consent from" individuals in Illinois "occurred in Illinois." *McGoveran*, 2021 WL 4502089, at *4; *Google*, 2024 WL 1141007, at *4 (same).

Take *McGoveran*, for example. There, the Illinois resident plaintiffs alleged that telephone calls they placed from Illinois were recorded and thereafter used to create "biometric voiceprints" that were in turn used to "authenticate" their identities—all while *they* were in Illinois. 175 F.4th at 437. The Third Circuit deemed "spot on" the district court's "focus[ ] on the geographic location of [the defendant] Amazon's servers rather than the location of the harmed Plaintiffs." 175 F.4th at 442. Amazon's servers, where Amazon would have processed and stored any voiceprints, were located in Virginia, and "[n]o Amazon employee in Illinois had access to any [such] biometric data." *Id.* The Third Circuit thus concluded that "the relevant activities . . . occurred outside of Illinois," and "the extraterritoriality doctrine bar[red] application of BIPA." *Id.* Other courts have

dismissed BIPA claims on similar facts, including where plaintiffs "fail[ed] to allege . . . that [their] biometric information was actually collected in Illinois." *Campana*, 2024 WL 2809838, at *1–3.

Courts have reached much the same result in cases alleging that photographs uploaded to "publicly accessible platforms" by Illinois residents from Illinois—much like plaintiffs' Illinois-produced and uploaded voice recordings, Compl. ¶ 60—were thereafter used by a defendant elsewhere to create biometric data in the course of training a technology. In *Clarifai*, for example, the plaintiffs alleged that "Clarifai captured biometric identifiers from [their] photographs and used their facial templates to train recognition technology," but they did not plausibly allege "that Clarifai performed any of this conduct in Illinois." No. 22-cv-314, Dkt. 29 at 24; *see id.* at 25 (citing *McGoveran* and observing that the "plaintiffs had not alleged" that Clarifai "maintained data centers"—which would have been used to process the photographs—in Illinois). While there certainly were *some* connections to Illinois—for example, Clarifai obtained the photographs directly from its Chicago-based investor and sold its "facial recognition products" to "Illinois customers"—the court could not "infer" that Clarifai's alleged misconduct occurred "*primarily or substantially* in Illinois" and dismissed the complaint. *Id.* at 25–27 (emphasis added). So, too, in *Google*, where Google allegedly used a dataset of biometric facial data created from photos the plaintiffs had uploaded to the internet to train its facial-recognition technology. *See* 2024 WL 1141007, at *3. The court dismissed the complaint, explaining that the plaintiffs had not "allege[d] that Google processes, stores, or otherwise makes use of the . . . Dataset (or any biometric data for that matter) *in Illinois*." *Id.* (emphasis added).

Courts have also found claims to be impermissibly extraterritorial where the defendant used the plaintiffs' biometric data to train facial-recognition technology, but obtained that data

outside of Illinois, rather than through "direct interactions" with the Illinois plaintiffs. *Vance v. Microsoft Corp.*, 2022 WL 9983979, at *6–8 (W.D. Wash. Oct. 17, 2022); *see also Vance v. Amazon.com, Inc.*, 2022 WL 12306231, at *6–8 (W.D. Wash. Oct. 17, 2022) (same); *Google*, 2024 WL 1141007, at *3 (explaining summary-judgment orders in *Microsoft* and *Amazon* apply "with equal force" at the pleadings stage); *Campana*, 2024 WL 2809838, at *3 (similar).

### B. Plaintiffs do not allege that Apple took any actions in Illinois.

Plaintiffs do not allege any transaction—or even interaction—between them and Apple in Illinois. That is because they cannot: they allege they are "non-users" of Apple's products. Compl. ¶¶ 51, 75. Accordingly, they have not claimed Apple "reached into Illinois" to "direct[ly] interact[ ]" with them to obtain their underlying recordings, much less their voiceprints, to train its technology. *Microsoft*, 2022 WL 9983979, at *7 (claims barred by extraterritoriality because no indication defendant "reached into Illinois" to interact with plaintiffs); *Amazon*, 2022 WL 12306231, at *7 (same); *Google*, 2024 WL 1141007, at *3 (dismissal warranted where "Plaintiffs fail to *allege* any direct interaction" with Google). In fact, plaintiffs allege they "never interacted with Apple in connection with the collection of their biometric data" *anywhere*. Compl. ¶ 146. They allege that their recordings were "published"—by someone other than Apple—"to publicly accessible platforms," and that "Apple sourced [the] recordings from [those] platforms"—rather than from them or Illinois. *Id.* ¶¶ 60, 62. Plaintiffs affirmatively allege Apple did so—and thereafter "extract[ed] voiceprints" to train its technology—on "servers *outside* Illinois." *Id.* ¶¶ 25, 61 (emphasis added). And they do not allege anyone at Apple collected or used their data in Illinois. Because plaintiffs have already alleged that Apple's conduct did not occur *primarily or substantially* in Illinois, the extraterritoriality doctrine bars their claims, and the complaint should be dismissed with prejudice.

### C. Plaintiffs cannot manufacture a connection to Illinois by claiming their data persists in Apple's products.

Plaintiffs attempt to gin up a connection to Illinois by asserting that Apple's training process "encode[s]" voiceprints "into the parameters of" the voice-synthesis technology, which Apple then "deploys in commercial products sold and distributed in Illinois," resulting in an "ongoing exploitation of the extracted biometric data" in Illinois. Compl. ¶¶ 42, 63. That speculative and attenuated theory is insufficient to save their claims.

Courts have repeatedly held that materially identical allegations do not overcome Illinois's extraterritoriality bar. In *Clarifai*, the court deemed the plaintiffs' allegations—that Clarifai sold "facial recognition products" trained on the plaintiffs' biometric data to "Illinois customers"—insufficient to support the "infer[ence]" that Clarifai's conduct "primarily or substantially occurred in Illinois." No. 22-cv-314, Dkt. 29 at 25–27. And in *Microsoft*, the court held that extraterritoriality barred plaintiffs' claims, even though Microsoft had processed their biometric data "on a server in Illinois," because the bulk of Microsoft's conduct occurred elsewhere. 2022 WL 9983979, at *8. Here, plaintiffs' allegations are even thinner than those in *Microsoft* because plaintiffs affirmatively claim Apple processed their data on servers "outside Illinois." Compl. ¶ 61. Accordingly, there is even more reason for this Court to conclude that the alleged "connection between [Apple's] conduct and Illinois is too attenuated and *de minimis*" to support the finding that "the circumstances underlying" its conduct *overall* "occurred primarily and substantially in Illinois." *Microsoft*, 2022 WL 9983979, at *8 (quoting *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 854).

These decisions are hardly outliers; they are consistent with the broader body of caselaw holding that where a technology is trained on particular data, the subsequent use of that technology does not generally constitute an "ongoing use" of that data. The only exception lies where the data

is "so integrated into [the] product that consumers necessarily *gain access* to [the] biometric data" *itself*. *E.g.*, *Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1322 (W.D. Wash. 2021). And courts have deemed such "integration" plausible only where plaintiffs have "alleged that the defendant used biometric data to develop a [facial recognition] database that allowed customers to search for . . . matches" between "novel images" and the people whose biometric data was used to develop the database—that is, where, "without the identified biometric data" of those people, "there would be no product to speak of." *Id.* at 1324; *Flores v. Motorola Sols., Inc.*, 2021 WL 232627, at *1–3 (N.D. Ill. Jan. 8, 2021).

Plaintiffs do not allege users of Apple's products can access or use *their* specific biometric data. Rather, they simply allege that their data was used during the training process to "inform[ ]" the "model weights." Compl. ¶ 42. At most this alleged practice constitutes a use of data merely to *improve* a technology, which does *not* render subsequent use of the technology a use of the data itself. *See Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1159–60 (N.D. Cal. 2024); *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1309 (W.D. Wash. 2021). The only plausibly alleged "connection this case has to Illinois is through plaintiffs' residence and [unilateral] actions in Illinois," which is insufficient as a matter of law. *Amazon*, 2022 WL 12306231, at *7.

Premising this lawsuit solely on that Illinois connection would be wrong not just as a matter of Illinois law, but federal constitutional law. "[E]xtraterritorial application" of the statutes here, including BIPA, "would . . . raise significant questions under the Commerce Clause." *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 379 (7th Cir. 1998). The Commerce Clause "precludes" a state from "control[ling] conduct beyond [its] boundaries." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Here, plaintiffs allege Apple engaged in misconduct "outside Illinois," Compl. ¶ 61, where Apple is subject to the laws of other states. But "[i]t is . . . difficult to see why

[Illinois] is entitled to insist that [these] other states adhere to the same . . . policy it has chosen." *Morley*, 142 F.3d at 379. Given "the presumption against extraterritoriality and the troublesome nature of the constitutional questions . . . raised," the Court should reject plaintiffs' invitation to invent a connection between Apple and Illinois and dismiss the complaint. *See id.* at 380.

## IV. Plaintiffs' BIPA claims should also be dismissed because they have not pleaded facts bringing Apple's conduct within the narrow ambit of the statute.

All of plaintiffs' BIPA claims fail because they do not allege the creation of data subject to BIPA (i.e., data allowing anyone to determine their identities). At a minimum, plaintiffs' claims under sections 15(c)-(e) should be dismissed because those sections regulate the use of data, not technology developed using that data, and plaintiffs allege only that Apple misused the latter.

### A. Plaintiffs do not plausibly allege the creation of data subject to BIPA.

The "most foundational aspect of a BIPA claim" is the creation of "biometric data [that] made [the] defendant capable of determining [the plaintiffs'] identities." *G.T. v. Samsung Elecs. Am.*, 742 F. Supp. 3d 788, 800–01 (N.D. Ill. 2024) (quoting *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022)). Plaintiffs' BIPA claims all rest on Apple's alleged creation of their "biometric identifiers" in the form of "voiceprints." Compl. ¶¶ 136–73. BIPA does not define the term "voiceprint," but both the Illinois Attorney General and courts in this District have adopted that word's plain meaning: a "distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." Public Access Opinion No. 17-011, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (quoting Black's Law Dictionary (10th ed. 2014)); *accord Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022). Courts have also emphasized—based on the plain meaning of "biometric identifier," as well as BIPA's structure and purpose—that to be covered by BIPA, data must both meet the plain meaning of "voiceprint" and make the defendant

capable of discerning the plaintiff's real-world identity. *See Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024) ("[S]omething can otherwise fall within BIPA's specific list of potential 'biometric identifiers' but still not be covered if it cannot identify."); *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024) ("[I]f the Court were to read BIPA as applying to any retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry without those items actually identifying an individual, it would contravene the very purpose of BIPA.").

Thus, to allege the creation of their "voiceprints" under BIPA, plaintiffs must plausibly allege Apple's creation of (1) uniquely identifying vocal data (2) linked to their real-world identities. *G.T.*, 742 F. Supp. 3d at 800–01. Courts routinely dismiss complaints where plaintiffs have failed to allege *one or the other* of these elements.[3] Because plaintiffs here have not plausibly alleged *either* of them, the Court should dismiss their BIPA claims.

**1. Plaintiffs do not plausibly allege the creation of vocal data that can be used to identify them.**

Plaintiffs assert that Apple used their recordings to create the type of unique vocal data "capable of identifying the speaker"—*i.e.*, a voiceprint. Compl. ¶ 140. But that is a conclusion of law, not a well-pleaded fact. Plaintiffs must "provide . . . allegations *demonstrating*" the creation of data "capable of identifying them." *Clarke*, 704 F. Supp. 3d at 866 (emphasis added) (dismissing BIPA claims). Plaintiffs here fall far "short of providing any *specific* factual allegations" of that sort. *Castelaz*, 2024 WL 136872, at *7 (emphasis added) (same).

In *Carpenter*, for example, the plaintiff alleged that a McDonald's AI voice assistant

[3] *See*, *e.g.*, *Martell*, 2024 WL 3011353, at *2–3; *Hooks v. CloudSpotter Techs. Inc.*, 2026 WL 1045734, at *2–4 (N.D. Ill. Apr. 17, 2026); *G.T.*, 742 F. Supp. 3d at 800–01; *Daichendt*, 2022 WL 17404488, at *5; *Castelaz v. The Estee Lauder Cos., Inc.*, 2024 WL 136872, at *6–7 (N.D. Ill. Jan. 10, 2024); *Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 865–66 (N.D. Ill. 2023); *Ji v. Naver Corp.*, 2023 WL 6466211, at *12 (N.D. Cal. 2023); *see also Zellmer*, 104 F.4th at 1125–26 (affirming summary judgment on the second of these elements).

created his voiceprint when he placed orders. 580 F. Supp. 3d at 517. But the plaintiff *supported* that allegation by explaining that the technology analyzes the "utterance[s] of [each] speaker" to create "a graphical representation, measurement, or illustration" of "extract[ed] voice information including pitch, volume, and duration along with identifying information." *Id.* "Finally, and importantly," he also alleged that McDonald's "present[ed]" customers like him with "certain menu items based on their past visits," suggesting that the data might have been able to identify them by their voices. *Id.* This combination of allegations, the court held, plausibly supported the theory the "technology mechanically analyzes customers' voices in a measurable way such that McDonald's has collected a voiceprint." *Id.*

Plaintiffs here allege, at a high level, that "voiceprints [are] extracted during [the process of] training" Apple's voice-synthesis technology. Compl. ¶ 42. But they fail to back up that allegation with facts, instead pointing only to "research and product documentation confirm[ing]" some Apple products can "mimic" or "clone a user's voice from a brief on-device recording session." *Id.* ¶¶ 2, 40. This allegation does not support their claims for two reasons.

*First*, even if this Court were to assume that Apple's technology creates uniquely identifying vocal data for *users* during their use of an ultimate product, that assumption still would not support the inference that Apple created any such data for *non-users* like plaintiffs during the process of *training the underlying technology*. *See* Compl. ¶ 75. Courts recognize that the "nature" of the data a technology creates for certain "purposes . . . may very well be different from the nature" of the data created for other "purposes." *Hooks*, 2026 WL 1045734, at *3. They therefore dismiss complaints that rely on the inference that, because a technology creates data that can be used to identify users, it "necessarily" does the same for non-users. *Id.*; *see also Zellmer*, 104 F.4th at 1126 (confining the analysis of BIPA's applicability to the data "that was [actually] created

for" the non-user plaintiff, even though the defendant's facial-recognition technology identified users). Because plaintiffs do not specifically allege uniquely identifying vocal data was created for them or even for people like them, the BIPA claims should be dismissed.

*Second*, the allegation that a particular technology can use a recording to generate a similar-sounding recording does not support the inference that the technology creates uniquely identifying vocal data. In *Martell*, for example, the plaintiff alleged that the defendant's software created "a unique digital signature (known as a 'hash')" of images "containing [his] face," which it "then compared against other signatures . . . to find copies of the same image." 2024 WL 3011353, at *2. The plaintiff alleged that because these signatures were based on images containing people's faces, the process "necessitate[d] creating a scan of [his] facial geometry." *Id.* The court dismissed the complaint, explaining that the allegations did "not necessarily imply" that the signature was a "scan of face geometry," which "could be a biometric identifier under BIPA," "as opposed to merely a record of the photo." *Id.* at *2–3. The court distinguished the allegations in *Carpenter*, which indicated that the technology at issue there had "extract[ed] voice information" that could plausibly "actually identify unique individuals" based on their voices. *Id.* at *3. In contrast, the plaintiff in *Martell* did not "allege facts indicating that" the technology created uniquely identifying data; "rather he summarily conclude[d] that it must." *Id.* The same is true of plaintiffs here, and their BIPA claims should be dismissed.

**2. Plaintiffs do not plausibly allege that any uniquely identifying vocal data was linked to their identities.**

Plaintiffs' BIPA claims should be dismissed for the independent reason that they do not plausibly allege that Apple linked any uniquely identifying vocal data to their *identities*. Courts regularly dismiss BIPA claims—notwithstanding the defendant's creation of data that could be used to identify the plaintiffs—where the plaintiffs did not provide the defendant with names to

link to that data, *see Daichendt*, 2022 WL 17404488, at *5; *Castelaz*, 2024 WL 136872, at *6–7; *Clarke*, 704 F. Supp. 3d at 866, and even where the plaintiffs did provide names, but the defendant did not actually link them to the data, *see Ji*, 2023 WL 6466211, at *12; *G.T.*, 742 F. Supp. 3d at 801. That conclusion is especially straightforward in a case where the plaintiff is not even a *user* of the defendant's products, as such a plaintiff necessarily has not provided the defendant with a name to link to any identifying data. *See Zellmer*, 104 F.4th at 1125–26.

Plaintiffs here are not users of Apple products. Compl. ¶ 75. Plaintiffs allege only that some of the platforms from which Apple allegedly sourced recordings reflect "the speaker's name" in "platform metadata," and that Apple "could have" used "metadata-extraction tools" that were "available to" Apple to collect this information. Compl. ¶ 62. That Apple had theoretical access to tools it could have used to collect metadata "does not necessarily mean, or even plausibly suggest," that it actually used those tools, grabbed the metadata, and then linked names included in that metadata to plaintiffs' specific recordings and then further to their specific voiceprints. *See Strautins*, 27 F. Supp. 3d at 880. For that reason, the allegations here are even weaker than those that have been deemed insufficient in other BIPA cases. *See, e.g.*, *Daichendt*, 2022 WL 17404488, at *5 (plaintiffs used defendant's face-scanning product but did "not allege that they provided . . . their names" to "connect [their face] scans . . . with their identities"); *Ji*, 2023 WL 6466211, at *12 (plaintiffs provided their "name[s]" as users of defendants' face-scanning apps but did not plausibly allege defendants linked their names to their face scans).

Sustaining plaintiffs' BIPA claims would require accepting one layer of speculation after another. Specifically, plaintiffs ask the Court to infer:

(1) that Apple must have sourced—from however many platforms had "metadata" reflecting the "speaker's name"—plaintiffs' specific recordings, which "matche[d] the profile" of recordings that would have been "optimal" for Apple's purposes (*id.* ¶¶ 62, 76);

(2) that Apple must have obtained and used "metadata-extraction tools" to collect plaintiffs' metadata—even though plaintiffs have offered no reason why Apple would have needed to collect that metadata—because Apple "could have" done so (*id.* ¶¶ 55, 62);

(3) that Apple was somehow able to, and for some reason must have decided to, determine which of plaintiffs' voices—potentially among many on a given recording, such as a television broadcast—was associated with the "speaker's name[s]" in that metadata (*id.* ¶¶ 46, 62); and

(4) that after processing their recordings in a manner that created voiceprints—which were not created as "discrete files," but rather were "encoded" into the "parameters" of Apple's technology (*id.* ¶ 42)—Apple was somehow able to, and for some reason must have decided to, associate each of their non-discrete voiceprints with their specific names.

As discussed in Section II, plaintiffs' chain of implausible inferences based only on what *could have* happened is not enough to establish that Apple used their recordings *at all*. But at the very least, it cannot support a claim that Apple used those recordings to create uniquely identifying data *linked to plaintiffs' identities* under the well-established BIPA case law—*Daichendt*, *Castelaz*, *Clarke*, *G.T.*, *Ji*, and *Zellmer*—surveyed here. Plaintiffs' BIPA claims should be dismissed with prejudice because they speculate as to whether Apple did anything wrong.

### B. Because plaintiffs allege a misuse of technology, not their data, they have not stated a claim under BIPA Sections 15(c), (d), and (e).

Plaintiffs fail to state a claim under BIPA Sections 15(c), (d), and (e) for another independent reason. Those provisions require entities to refrain from selling covered biometric data, to obtain consent before disclosing it, and to securely store it. 740 ILCS 14/15(c)-(e). But

the only thing plaintiffs allege Apple sold, disclosed, or failed to secure was voice-synthesis *technology* that was purportedly *trained on* their data. Compl. ¶¶ 154, 161–62, 169–70. Because Plaintiffs "conflate[] technology with [b]iometrics," and because Sections 15(c)-(e) of BIPA regulate only the latter, the Court should dismiss these claims. *G.T.*, 742 F. Supp. 3d at 798.

Plaintiffs rely on their theory (discussed above in Section III.C) that voiceprints created during the training process are "encoded" into the technology to allege that Apple's commercialization of the technology through products like Siri and Personal Voice constituted selling, disclosing, and insecurely storing that *biometric data*. Compl. ¶¶ 42, 154, 161–62, 169–70. But (as also discussed above) that theory would be viable only in a case where biometric data is "so integrated into a product that consumers necessarily gain access to" the data—e.g., a searchable database of the plaintiffs' biometric data. *Delgado*, 718 F. Supp. 3d at 1159–60 (quoting *Vance*, 534 F. Supp. 3d at 1322). Again, plaintiffs do not plausibly allege that consumers can access *their specific* biometric data (that is, their voices)—which they allege does not even exist in the form of "discrete files." Compl. ¶ 42. They allege only that the use of their data "inform[s]" the technology's "output[s]" (*id.*)—an admission that the products and the data are not one and the same. *Delgado*, 718 F. Supp. 3d at 1160–61 (dismissing Section 15(c) claim); *Vance*, 534 F. Supp. 3d at 1309 (same). Because there are no allegations that Apple mishandled plaintiffs' biometric data, as opposed to technology that was trained on that data, the Court should dismiss plaintiffs' claims under Sections 15(c)–(e).

Plaintiffs allege in the alternative that Apple violated Section 15(c) by using their data to increase the value of its technology—e.g., by generating "subscription-services revenue for Apple services that incorporate Apple's voice technology" and "App Store revenue derived from third-party applications that depend on Apple's voice and speech models." Compl. ¶ 154. This theory

is also wrong as a matter of law. Plaintiffs latch onto the language in Section 15(c) that makes it unlawful to "sell, lease, trade, *or otherwise profit from*" biometric data to contend that Section 15(c) encompasses any way a company like Apple might use data to its financial benefit, such as to develop a technology that produces "revenue." *Id.* ¶¶ 153–54. Courts have rejected this precise reading of Section 15(c), explaining that because "otherwise profit" must "be interpreted in light of the terms that precede it: sell, lease and trade," any claim under Section 15(c) must be based on a "*transaction[]* with two components: (1) *access to biometric data is shared or given to another*; and (2) in return for that access, the entity receives something of value." *Vance*, 534 F. Supp. 3d at 1306–07 (emphasis added); *accord Delgado*, 718 F. Supp. 3d at 1159. In other words, there can be no BIPA claim premised on the alleged use of biometric data to "develop" a technology, make a technology "more valuable in the commercial marketplace," or generate "increased sales of . . . products"; what matters is instead the alleged "sharing [of] access to the biometric data" itself. *Vance,* 534 F. Supp. 3d at 1308–09; *Delgado*, 718 F. Supp. 3d at 1160–61.

## V. Plaintiffs' remaining claims should be dismissed for additional reasons.

### A. Plaintiffs have not stated a claim under the Illinois Right of Publicity Act.

"To state a claim for a violation of IRPA, the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citing 765 Ill. Comp. Stat. 1075/30(a)). Here, plaintiffs do not allege Apple used their voices in a way that could identify them to a reasonable audience; nor do they allege Apple used their voices to offer to sell or sell anything. These claims should be dismissed with prejudice.

#### 1. Plaintiffs do not allege that Apple's purported use of their voices was sufficient to identify them to a reasonable audience.

To state an IRPA claim under section 30(a), Plaintiffs must first allege that Apple

appropriated their identities. "Identity," under the statute, means "any attribute of an individual that serves to *identify* that individual to an ordinary, reasonable viewer or listener, including but not limited to: [that individual's] voice." 765 Ill. Comp. Stat. 1075/5 (emphasis added). "While ['voice'] is listed as an attribute of an individual that serves to identify an individual, in context, IRPA does not state that a [voice] alone is necessarily sufficient to identify an individual." *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *6 (N.D. Ill. Aug. 29, 2017). "Under the act, unauthorized use of a person's [voice] for commercial purposes is actionable if the defendant's use serves to identify that individual to a reasonable audience." *Id.*

Plaintiffs do not allege anything of the sort. According to the complaint, Apple's technologies use and "reproduce[]" pieces of plaintiffs' voices—their "vocal characteristics"—to generate "synthetic" voice outputs that "simulate" those characteristics. Compl. ¶ 181. What characteristics are reproduced or simulated and how Apple's use of those characteristics is sufficient to "identify [plaintiffs] to a reasonable audience" is a mystery. *Dobrowolski*, 2017 WL 3720170, at *7. In other words, plaintiffs have "not pointed to any identifiable features [in the voice outputs] that would be distinctive to [them]." *Marchman v. Kovel-Fuller*, 2007 WL 9811116, at *3 (N.D. Ill. July 9, 2007) (dismissing IRPA claim). To the contrary, plaintiffs allege their voices have been mixed in with "tens of thousands" of other voices to produce "synthetic" voices they do not even allege sound like their own. Compl. ¶¶ 55, 181. These allegations are weaker than those in *Marchman*, where the court dismissed the plaintiff's IRPA claim, even though he alleged "his friends . . . asked whether he was in the commercial," because the friends "did not provide a specific reason why they thought the image was of him." 2007 WL 9811116, at *3. Here, there are no allegations, conclusory as in *Marchman* or otherwise, that any member of the public identified (or could identify) plaintiffs in any output from Apple's voice products.

For the same reasons, plaintiffs' claims under section 30(b)—what plaintiffs refer to as the "2024 amendments to IRPA"—should be dismissed. Compl. ¶ 180. That section prohibits the knowing distribution of sound recordings containing "unauthorized digital replicas," 765 Ill. Comp. Stat. 1075/30(b), where "digital replicas" are defined as "newly created, electronic representations of the voice . . . of an actual individual" "which a reasonable person would believe is that particular individual's voice," 765 Ill. Comp. Stat. 1075/5. There are, again, no allegations that anyone listened to Apple's outputs and claimed to have heard plaintiffs' voices, or that Apple reproduced enough of their voices—including divorced from the characteristics of other people's voices—such that a reasonable person would recognize them as belonging to plaintiffs. Accordingly, the IRPA claim should be dismissed. *See Dobrowolski*, 2017 WL 3720170, at *7.

#### 2. Plaintiffs do not allege Apple used their identities to sell anything.

The IRPA claim should also be dismissed because plaintiffs do not allege Apple "held out" their identities "to aid, effectuate, or propose a commercial transaction." *Huston*, 53 F.4th at 1102.

Plaintiffs here do not claim that Apple used their voices to sell any Apple products or services. The complaint is devoid of any allegations that Apple "publiciz[ed] [plaintiffs'] information" to sell voice-synthesis products like Siri, that consumers were able to hear plaintiffs' voices before making any purchases, or that their voices were "used to sell or promote" any of Apple's products. *Huston*, 53 F. 4th at 1100. Plaintiffs instead allege that their data "was included as part of the product sold," *id.*—"The product is the data; the data is the product," Compl. ¶ 37. But it makes no difference under IRPA whether plaintiffs' data was sold; what matters is that there are no allegations that it was "used to sell anything. That brings [plaintiffs'] claim outside IRPA's ambit," and the claim should be dismissed with prejudice. *Huston*, 53 F.4th at 1101.

### B. Plaintiffs have not stated a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

Plaintiffs' ICFA claim should be dismissed because they do not allege they were acting like consumers and do not adequately plead an unfair or deceptive trade practice.

**1. The ICFA protects consumers, but plaintiffs have alleged they are not consumers of Apple products.**

The ICFA protects consumers against unfair methods of competition. *Patel v. Zillow, Inc.*, 2018 WL 2096453, at *8 (N.D. Ill. May 7, 2018). Where, as here, the ICFA claim is brought by plaintiffs who are not consumers, they must allege a "consumer nexus" and "establish . . . 'their actions were akin to a consumer's actions.'" *AbbVie Inc. v. Payer Matrix, LLC,* 2025 WL 2374490, at *18 (N.D. Ill. Aug. 15, 2025).

Plaintiffs cannot establish this link as a matter of law. They are a group of journalists and audiobook narrators whose work is publicly distributed across platforms like Audible and Spotify. *See* Compl. ¶¶ 14–19, 93, 96. Because they are "selling" products to consumers and are "not the potential buyers" of such products, they cannot "allege . . . their actions [are] akin to consumers' actions," and their claim should be dismissed. *Patel*, 2018 WL 2096453, at *9–10; *see also Garvey v. Citizens for Rauner, Inc.*, 2020 WL 13512715, at *4 (N.D. Ill. Sept. 3, 2020) (similar).

Plaintiffs also cannot establish a consumer nexus because the relief they seek "'will not serve the interests of consumers.'" *AbbVie*, 2025 WL 2374490, at *18; *Patel*, 2018 WL 2096453, at *9. Under ICFA, plaintiffs claim as "actual economic injury" "lost and diminished licensing income, suppressed voiceover and narration rates, diverted opportunities, and loss of control over their biometric and professional identities." Compl. ¶ 193. None of these damages, if awarded, would flow to consumers who use plaintiffs' voiceover and narration products or otherwise "serve [any] injured consumers." *AbbVie*, 2025 WL 2374490, at *18. Because plaintiffs "focus on their [own harms]" and the "costs they have incurred," they do not allege a connection to consumers, and their ICFA claim should be dismissed. *Patel*, 2018 WL 2096453, at *9.

Plaintiffs nonetheless suggest a connection exists because Apple distributed products "to Illinois residents." Compl. ¶ 187. "A consumer nexus is not established, however, simply because consumers are the ultimate users of the products at issue." *Garvey*, 2020 WL 13512715, at *4.

Finally, the defects here are incurable and justify dismissing the claims "with prejudice." *Patel*, 2018 WL 2096453, at *9. Plaintiffs cannot change the fact that they sell their products to consumers, that they do so "in the same audio markets" in which Apple also "compete[s]," and thus are not acting in any way like consumers. *See, e.g.*, Compl. ¶ 85 (Marin). Nor can they change the way they claim to have been injured by Apple's alleged conduct.

### 2. Plaintiffs have not pleaded an unfair or deceptive business practice, let alone with the requisite particularity.

Plaintiffs bring two claims under ICFA. First, they claim Apple's conduct was "unfair" because Apple used their "voice recordings" without "notice," which "cause[d]" them "substantial economic and privacy injury" and violated the "public policy as embodied in BIPA and IRPA." Compl. ¶¶ 188–90. That claim is "predicated on the success" of plaintiffs' claims under BIPA and IRPA, and should be dismissed because plaintiffs have not adequately alleged a violation of either statute. *Whittler v. Midland Funding, LLC*, 2015 WL 3407324, at *2 (N.D. Ill. May 27, 2015) (dismissing ICFA claim in part because plaintiff could not allege violation of other statute); *see also Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Jan. 31, 2017) (similar).

Second, plaintiffs allege Apple's conduct was "deceptive" because Apple discloses to users the kinds of data it uses to train its "Apple Intelligence . . . models" but is silent on the kinds of data it uses to train its "voice synthesis models." *Id.* ¶ 192. This "asymmetric disclosure" supposedly "creates a misleading impression about Apple's commitment to training-data transparency." *Id.* This second claim is premised on a failure to disclose and is therefore subject to the "heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which

requires that circumstances of fraud be pleaded with particularity." *In re Ventra Card Litig.*, 2015 WL 1843044, *5 (N.D. Ill. Apr. 21, 2015). Plaintiffs have not cleared that high bar. The crux of their "deceptive" claim is that Apple does not tell the public that it used plaintiffs' voices to train its voice-synthesis models. But the key allegation supporting this theory—that "Apple ingested" "the voice recordings of each named Plaintiff" "to train its . . . models"—is pleaded only on "information and belief." Compl. ¶ 76. That shortcut is prohibited under Rule 9(b), where, as here, the allegation is "integral to the deceptive practices claim." *Slafter v. Haier US Appliance Sols., Inc.*, 605 F. Supp. 3d 1102, 1107 (S.D. Ill. 2022).

Plaintiffs' allegations are missing key details in any event. Plaintiffs never specify "the identity of the person who made the . . . omission," "the time, place, and content of the . . . omission," or the method by which the . . . omission . . . should have been[] communicated to the plaintiff." *See Precision Cam, Inc. v. Fox & Fox*, 2015 WL 803552, at *8 (S.D. Ind. Feb. 24, 2015) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (dismissing constructive-fraud claim for failure to satisfy Rule 9(b))). Nor do plaintiffs specify why any such omission would have been a "material fact that a consumer would rely on in making her decision" to purchase Apple's products. *Seigal v. Geico Casualty Co.*, 523 F. Supp. 3d 1032, 1042–43 (N.D. Ill. Mar. 4, 2021) (holding plaintiff's omission-based ICFA claim did not satisfy Rule 9(b)). These defects doom plaintiffs' ICFA claim. *See Darne v. Ford Motor Co.*, 2015 WL 9259455, at *10 (N.D. Ill. Dec. 18, 2015) (dismissing ICFA claim based on alleged omission for failure to satisfy Rule 9(b)).

### C. Plaintiffs fail to state a claim under the Illinois Uniform Deceptive Trade Practices Act.

Plaintiffs' IUDTPA claim is based on Apple's alleged failure to disclose to consumers that its models are trained on plaintiffs' voiceprints. Compl. ¶ 198. Because this claim "sound[s] in

fraud," it is subject to and flunks Rule 9(b) for the same reasons discussed above. *See* Section V.B.2; *CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *2–3 (N.D. Ill. Feb. 27, 2008).

The IUDTPA claim should also be dismissed because plaintiffs "'cannot allege that [they] will be deceived in the future'" and thus are not entitled to injunctive relief (the only relief available under the statute). *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015). Plaintiffs claim to know the truth about Apple's deceptive practices—that Apple does not disclose its voice-synthesis models are built on plaintiffs' data. Compl. ¶ 198. "[A]ny future . . . harm [plaintiffs] incur[] will be the product of that past deception, not some future deception, which makes an injunction . . . inappropriate." *Darne*, 2015 WL 9259455, at *12.

### D. Plaintiffs fail to state a claim for unjust enrichment.

Plaintiffs' claim for unjust enrichment should be dismissed because it "will stand or fall with" the claim to which it relates, and plaintiffs have not stated any claim against Apple. *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *9 (N.D. Ill. Sept. 9, 2024).

## CONCLUSION

Plaintiffs' complaint is a house of cards built on speculation about data Apple potentially could have created, rather than any well-pleaded facts about data it actually did create. Plaintiffs claim that Apple *could have* taken their voice recordings from online platforms just because Apple has internet access; *could have* created their voiceprints using those recordings just because Apple offers voice-synthesis products to users; and *could have* linked their identities to their voiceprints just because their names may have been listed in metadata. But plaintiffs do not allege Apple *actually did* any of these things to create voiceprints linked to their identities. Plaintiffs' mere intuition that they have been harmed by *someone*—if not Apple, then one of the other tech companies they have sued—is not enough to sustain their complaint, which this Court should dismiss with prejudice.

Dated: August 17, 2026

Respectfully submitted,

By: *_/s/ Lauren Goldman_*

Lauren Goldman
Michael Brandon (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

Diana M. Feinstein (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2000 Avenue of the Stars, Suite 1200N
Los Angeles, California 90067-4700
Telephone: 310.552.8500
Facsimile: 310.552.7000
dfeinstein@gibsondunn.com

Andrew Robb (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, California 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333
arobb@gibsondunn.com

Amanda J. Sterling (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.530.9500
asterling@gibsondunn.com

Andrew G. May
Roshni S. Vos
Neal, Gerber & Eisenberg LLP
225 W. Randolph Street, Suite 2800
Chicago, Illinois 60606
Telephone: 312.269.8000
amay@nge.com
rvos@nge.com

*Counsel for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

Roshni S. Vos, an attorney, certifies that on August 17, 2026, she caused a copy of the foregoing ***Memorandum of Law in Support of Defendant Apple Inc.'s Motion to Dismiss Plaintiffs' Complaint*** to be filed via this Court's CM/ECF System, which will send notice of this electronic filing to all counsel of record receiving electronic notification.

*/s/ Roshni S. Vos*