**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

YOHANCE LACOUR, CAROL MARIN, PHILIP ROGERS, ROBIN AMER, LINDSEY DORCUS, and VICTORIA NASSIF, each individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

APPLE INC., a California corporation,

*Defendant*.

Case No. 1:26-cv-05536

Judge Sharon Johnson Coleman

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendant*
*Apple Inc.*

## TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Court should dismiss the entire complaint for lack of personal jurisdiction. ..... 2

II. The Court should dismiss plaintiffs' entire complaint because they do not plausibly allege Apple's supposed misconduct occurred primarily and substantially in Illinois. ..... 5

III. The Court should dismiss the entire complaint because plaintiffs do not plausibly allege that Apple used their recordings. ..... 6

IV. Plaintiffs' BIPA claims should be dismissed because they have not pleaded facts bringing Apple's conduct within the narrow ambit of the statute. ..... 10

A. Plaintiffs do not plausibly allege the creation of data subject to BIPA. ..... 10

B. Plaintiffs fail to state any claims under BIPA sections 15(c)-(e). ..... 12

V. All of plaintiffs' remaining claims should be dismissed for other, independent reasons. ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....3, 4

*ATC Healthcare Services, Inc. v. RCM Techs., Inc.*,
192 F. Supp. 3d 943 (N.D. Ill. 2016) ....15

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) ....4, 5, 7, 8

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ....1, 3, 4

*CardioNet, Inc. v. LifeWatch Corp.*,
2008 WL 567031 (N.D. Ill. Feb. 27, 2008) ....15

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ....12

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
2022 WL 252702 (N.D. Ill. Jan. 27, 2022) ....13

*In re Clearview AI, Inc. Consumer Priv. Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ....6, 11, 12

*De Bouse v. Bayer*,
235 Ill. 2d 544, 922 N.E.2d 309 (2009) ....14

*G.T. v. Samsung Elecs. Am., Inc.*,
186 F.4th 470 (7th Cir. 2026) ....2, 9

*Harlow v. Children's Hosp.*,
432 F.3d 50 (1st Cir. 2005) ....3

*Hooks v. CloudSpotter Techs. Inc.*,
2026 WL 1045734 (N.D. Ill. Apr. 17, 2026) ....11

*Javid v. M.A.C. Cosmetics, Inc.*,
2026 WL 1601454 (N.D. Ill. June 4, 2026) ....11, 12

*Marchman v. Kovel-Fuller, LLC*,
2007 WL 9811116 (N.D. Ill. July 9, 2007) ....13

*McGoveran v. Amazon Web Services, Inc.*,
175 F.4th 434 (3d Cir. 2026) ....................1, 5, 6

*Moomaw v. GeoSnapShot PTY LTD*,
2025 WL 870319 (S.D. Ill. Mar. 20, 2024) ....................13

*Mutnick v. Clearview AI, Inc.*,
2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) ....................4

*Patel v. Zillow, Inc.*,
2018 WL 2096453 (N.D. Ill. May 7, 2018) ....................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................14

*POET Rsch., Inc. v. Hydrite Chem. Co.*,
2025 WL 2696411 (N.D. Ill. Sept. 22, 2025) ....................5

## INTRODUCTION

Plaintiffs' opposition confirms that they have not plausibly alleged what Apple did wrong or where its supposed misconduct took place. Asserting a raft of statutory and common-law claims, plaintiffs theorize that because Apple has an internet connection, because plaintiffs' voice recordings are all over the internet, and because Apple has developed software that can create synthetic voices, Apple must have extracted and used plaintiffs' "voiceprints" in developing that software. And Apple must have done so in Illinois, because plaintiffs live in Illinois and have recorded their voices there. No part of that theory has been supported with plausible allegations.

Start with the problem of *where* this misconduct supposedly took place. For this Court to exercise specific personal jurisdiction over Apple, and to avoid impermissibly applying Illinois law extraterritorially, plaintiffs must allege that Apple committed wrongdoing *in Illinois*. The complaint contains zero allegations to that effect. Instead, plaintiffs point to Apple's sales and their own residency here. But Apple sells products in all 50 states. Those sales do not open it to every suit in every state, so long as a plaintiff lives there. That theory is directly contrary to Supreme Court decisions policing the limits of personal jurisdiction, *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017), and it would call for the application of Illinois statutes like BIPA to conduct everywhere, in defiance of a chorus of authority limiting those statutes to claims premised on Illinois conduct, *e.g.*, *McGoveran v. Amazon Web Services, Inc.*, 175 F.4th 434, 441–42 (3d Cir. 2026).

Now consider *what* plaintiffs allege Apple did. All of plaintiffs' claims rest on the assertion that Apple must have used their recordings to train its voice-synthesis technologies. But plaintiffs point to virtually no *facts* in support of that conclusory assertion. Plaintiffs argue that because Apple once allegedly made authorized use of a small set of other people's recordings to train one technology, it must have made *un*authorized use of *their* recordings to train *additional*

technologies. That is simply implausible.

Plaintiffs ask the Court to excuse their flimsy pleading on the ground that only Apple knows what recordings it used, if any, to train its voice-synthesis technologies. But as the Seventh Circuit recently held, the fact that a "technology compan[y] . . . [has] significantly more information about their proprietary systems and software" does not relieve plaintiffs of their "burden . . . to plausibly state a cause of action that can withstand judicial scrutiny." *G.T. v. Samsung Elecs. Am., Inc.*, 186 F.4th 470, 477 (7th Cir. 2026).

The absence of facts (not mere conjecture) showing what Apple actually did (and did *in Illinois*) is just one of many problems with plaintiffs' complaint. Apple's motion to dismiss and the remainder of this reply catalog the rest. Because plaintiffs have not suggested they could plead anything that would fix all those problems, this Court should dismiss without leave to amend.

## ARGUMENT

### I. The Court should dismiss the entire complaint for lack of personal jurisdiction.

The parties agree Apple is not subject to general jurisdiction in Illinois because it is not at home here. Mot. at 4–5; Opp. at 3. Only specific personal jurisdiction is in dispute. Apple argued that this Court lacks specific personal jurisdiction because none of plaintiffs' claims arise out of Apple's contacts with Illinois. Mot. at 4–7. Plaintiffs respond that their claims are connected to Illinois because of Apple's sales in Illinois of devices equipped with voice-synthesis software. Opp. at 3–6. That theory does not cover most of plaintiffs' nine claims, and it cannot be squared with Supreme Court and Seventh Circuit law on the limits of personal jurisdiction.

Plaintiffs' sales-centric jurisdictional theory is categorically inapplicable to six of their claims: Count I (collecting voiceprints in violation of BIPA § 15(b)), Count II (failing to develop a retention policy for voiceprints in violation of BIPA § 15(a)), Count IV (distributing voice models to vendors in violation of BIPA § 15(d)), Count V (failing to protect plaintiffs' data in

violation of BIPA § 15(e)), Count VIII (failing to disclose voice products were trained on that data in violation of the IUDTPA), and Count IX (unjust enrichment from use of plaintiffs' voiceprints). Under plaintiffs' theory, any collection of their voiceprints for use in the development of voice-synthesis software would necessarily have happened long before the *sale* of that software in Illinois. And "contacts" that "com[e] into existence after the cause of action arose" are "not . . . relevant" in determining whether the plaintiffs' lawsuit is related to those contacts. *Harlow v. Children's Hosp.*, 432 F.3d 50, 62 (1st Cir. 2005).

Plaintiffs appear to insist that this Court has specific jurisdiction over those six claims not because the claims themselves are connected to Apple's sales in Illinois, but instead simply because Apple generally does have sales in Illinois. In other words, as plaintiffs seem to see it, the fact Apple does business here means that it is also open to suit here even on claims not directly connected to that business. But the Supreme Court has rejected this very theory, describing it as a "loose and spurious form of general jurisdiction" and rejecting the idea that a corporate defendant like Apple should be subject to jurisdiction on any claim in any state where its products are sold. *Bristol-Myers*, 582 U.S. at 264.

That leaves plaintiffs' remaining claims, Counts III (BIPA § 15(c)), VI (IRPA), and VII (ICFA). Plaintiffs' allegations in support of these claims largely focus on Apple's online sales; they claim Apple profits (indirectly) from its use of plaintiffs' data in connection with services like Apple Books, App Store, and Apple Music that are offered in Illinois (as well as in every other state). Compl. ¶¶ 154, 178, 181, 187. Even as to these claims, however, plaintiffs' theory fails. A court may exercise specific jurisdiction over a defendant only if that defendant has "targeted" the forum state, and "the operation of an interactive website" available to everyone, in every state, is not enough to meet that standard. *Advanced Tactical Ordnance Sys., LLC v. Real Action*

*Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

In an effort to persuade the Court that it has jurisdiction after all, plaintiffs rely heavily on this Court's decision in *Mutnick v. Clearview AI, Inc.*, 2020 WL 4676667 (N.D. Ill. Aug. 12, 2020), where this Court held that it had specific jurisdiction because the defendants sold biometric data in Illinois. Opp. at 4–5. But *Mutnick* demonstrates why jurisdiction is lacking here; the claims there were premised on a long chain of Illinois-specific conduct by the defendants: they (1) scraped "images . . . uploaded and created using internet-based platforms and websites from companies in Illinois"; (2) scraped images from companies "operat[ing] servers in Illinois"; (3) built a "searchable database" of "facial recognition" data from those images; (4) sold access to the database by "execut[ing] hundreds of agreements . . . with numerous Illinois law enforcement and other government agencies"; and (5) "marketed" the database specifically "to the Illinois Secretary of State." *Mutnick*, 2020 WL 4676667, at *1–2. Here, by contrast, the gravamen of the claims is that Apple, in some unspecified place, took plaintiffs' data from the internet; stored the data in some other unspecified place; in perhaps some other unspecified place, developed software using the data; and then sold devices incorporating the software in Illinois. The only link in that chain connected to Illinois is the last one. That cannot be enough to create jurisdiction under *Bristol-Myers*, which made clear that sales activity across the country does not open a company to every claim in every state. *See also Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727, at *7–8 (N.D. Ill. Aug. 6, 2024) (no specific jurisdiction because the allegations were not Illinois-specific).

Recognizing they have not alleged enough to support specific jurisdiction, plaintiffs "[a]lternatively" seek discovery into where Apple acquired their recordings, where it transferred their data, and the people and systems it employs in Illinois. Opp. at 6. The Court should deny this request for two reasons. First, a plaintiff must state a colorable basis for jurisdiction before

discovery may be permitted, but plaintiffs have failed to do so here because there are no plausible allegations that Apple's suit-related contacts are connected to Illinois. *Brantley*, 2024 WL 3673727, at *7–8. Second, plaintiffs do not explain why the discovery they seek is necessary. *POET Rsch., Inc. v. Hydrite Chem. Co.*, 2025 WL 2696411, at *8 (N.D. Ill. Sept. 22, 2025).

## II. The Court should dismiss plaintiffs' entire complaint because they do not plausibly allege Apple's supposed misconduct occurred primarily and substantially in Illinois.

Even if plaintiffs had alleged the minimum contacts necessary to support specific jurisdiction, that would not be enough for the Court to hear this case. They also have to clear Illinois' bar on the extraterritorial application of state statutes and allege that Apple's supposed misconduct occurred "primarily and substantially" in Illinois. Mot. at 11–14. Plaintiffs say there is no extraterritoriality problem because they "reside in Illinois," "Apple allegedly withheld § 15(b) notices here," it "sells and delivers the accused products here," and it "acquired Illinois-produced recordings from sources displaying their Illinois provenance." Opp. at 10–11. But courts have repeatedly rejected as insufficient precisely these sorts of irrelevant, generic connections that do not focus on where the defendant's supposed misconduct took place.

The Third Circuit held as much just a few months ago in *McGoveran*. There, the plaintiffs were "Illinois citizens" who claimed "Amazon . . . violated [BIPA] by collecting [their] biometric voiceprints without consent" in violation of Section 15(b). 175 F.4th at 437. The court held their BIPA claims were barred by the doctrine of extraterritoriality because they did not allege that "Amazon's . . . misconduct underlying their BIPA claims 'occurred primarily and substantially in Illinois.'" *Id.* at 441. "No Amazon employee in Illinois had access to any biometric data." *Id.* at 442. Nor did Amazon "store [their] biometric identifiers" on any servers "in Illinois." *Id.* Accordingly, "the extraterritoriality doctrine bar[red] application of BIPA." *Id.* So too here. Plaintiffs are also Illinois citizens who allege a technology company violated BIPA by collecting

their voiceprints without consent, but they do not allege Apple stored that data anywhere in Illinois. *See* Compl. ¶¶ 46, 146. The allegations that plaintiffs reside in Illinois, produced their recordings there, and failed to receive notices while living there are insufficient because those allegations focus on the "location of the harmed [p]laintiffs," which is not enough to clear the bar on extraterritoriality. *McGoveran*, 175 F.4th at 442.

Plaintiffs' argument on *McGoveran* is unclear, but they appear to suggest it does not apply here because they have alleged Apple sold products in Illinois trained on their data. Opp. at 13. But *McGoveran* asked where the defendant "*stored*" plaintiffs' "biometric identifiers," not where it *sold* products that allegedly used that data. 175 F.4th at 442 (emphasis added). In any event, plaintiffs' sales-centric theory does not give rise to the inference that Apple's supposed *misconduct* (before those sales) occurred primarily and substantially in Illinois. *See* Mot. at 15–17.

Finally, plaintiffs contend this case is like *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022), where this Court supposedly "considered both where the plaintiffs lived and where the defendants failed to provide the required notices" to determine "whether Illinois violations were plausibly alleged." Opp. at 11. But the Court took into account far more than that; it also considered that the defendants reached into Illinois and "contracted with hundreds of Illinois entities," to sell them the plaintiffs' unadulterated biometric data. 585 F. Supp. 3d at 1121–22. Plaintiffs here do not plausibly allege Apple sold biometric data to anyone.

## III. The Court should dismiss the entire complaint because plaintiffs do not plausibly allege that Apple used their recordings.

Every one of plaintiffs' claims rests on the premise that Apple used their recordings to train its voice-synthesis technologies. Plaintiffs attempt to defend that premise by pointing to Apple's alleged use of a limited set of recordings for training and by speculating about a few places where Apple may have found their recordings. Neither nudges their theory from possible to plausible.

**Apple Books.** Plaintiffs Lindsey Dorcus and Victoria Nassif, whose works can be found on Apple Books, allege Apple used recordings supplied by Findaway Voices, an audiobook distributor, to train and build its synthetic narration program, Narrated by Apple Books. Opp. at 7 (citing Compl. ¶ 56). Plaintiffs say these allegations give this Court "a concrete reason to infer" that Apple used their recordings for training. *Id.* For three reasons, they do not. First, Ms. Dorcus and Ms. Nassif concede they have no reason to believe their recordings were in the Findaway dataset. Opp. at 7 n.3. Second, the alleged use they describe was "authoriz[ed]" by authors' contracts with Findaway, which allowed it to share their recordings with third parties like Apple "for machine learning training and models." *Id.* at 7 (quoting Compl. ¶ 56). Third, they allege Apple agreed to "halt . . . use" of all Findaway recordings. Opp. at 7 (quoting Compl. ¶ 56).

**Apple Podcasts.** Plaintiffs Yohance Lacour and Robin Amer allege only that their recordings exist on Apple Podcasts. *See* Opp. at 7. But they do not identify a single instance of Apple's using podcast recordings to build anything. *See id.*

**Broadcast archives.** Plaintiffs Carol Marin and Philip Rogers allege their recordings can be found only in various TV, radio, and online archives. Compl. ¶¶ 84, 87. They do not allege those recordings can be found on any Apple platform, nor do they allege a specific instance of Apple's using any broadcast recordings to build any product. Opp. at 8.

Plaintiffs' opposition thus confirms they have no plausible basis for alleging Apple used their recordings to train any technology. Their theory is that Apple must have used their recordings because they exist somewhere on the internet. Courts routinely reject similar theories of liability as implausible because they are based on speculation rather than well-pleaded facts. In *Brantley*, for example, the plaintiff alleged the defendant must have used his photos to train its app because (1) he "regularly use[d] various social-media platforms" and (2) the defendant must have used a

dataset containing photos taken from those platforms. 2024 WL 3673727, at *2. The district court rejected that theory as implausible because the plaintiff did not connect his photos to the dataset. The plaintiff did not allege the dataset "contained every photo uploaded to" various social-media platforms, or that the plaintiff uploaded photos of himself to those platforms during that time. *Id.* at *5–6. So too here. Plaintiffs allege only that their recordings exist on the internet. They do not plausibly connect their recordings to any dataset Apple may have used to train any technology.

Plaintiffs attempt to distinguish *Brantley*, arguing that the plaintiff there asked the court to infer the defendant had used the plaintiff's data based only "on the plaintiff's online presence and the size of [the] training dataset." Opp. at 8. That does not distinguish *Brantley* at all; plaintiffs here are asserting the exact same theory. Like the *Brantley* plaintiff, they allege only that their recordings can be found all over the internet, Compl. ¶¶ 81, 84, and that Apple's dataset consisted of "tens of thousands of hours of speech" from all kinds of "publicly available" audio platforms, *id.* ¶ 55. But as in *Brantley*, plaintiffs' online presence plus a large dataset do not yield the conclusion that their data is "contained" in the dataset. 2024 WL 3673727, at *5.

Plaintiffs also say *Brantley* is different because the plaintiff there had access to a "searchable dataset," which would have enabled them to make more specific allegations, whereas plaintiffs here do not. Opp. at 8–9. But plaintiffs here *do* have access to such a dataset. They claim Apple used the LibriTTS dataset for training, Compl. ¶ 54, and provide a link to it, Dkt. 36-2 at 3–4. Plaintiffs do not allege, however, that they searched the dataset or that their recordings were ever in that dataset to begin with. The only other dataset plaintiffs allege Apple used is the Findaway dataset, *id.* ¶ 56, but they do not allege their recordings were in that dataset either. Because plaintiffs' claims that Apple used their recordings are implausible, the complaint should be dismissed. *See Brantley*, 2024 WL 3673727, at *5.

Plaintiffs argue in the alternative they need not allege any facts supporting their theory that Apple must have used their recordings because "Apple's source records . . . remain in Apple's exclusive control." Opp. at 9. But the Seventh Circuit has held that plaintiffs must allege facts to state a plausible claim even if those facts are in the possession of the defendant. Only two months ago, the Seventh Circuit affirmed the dismissal of a BIPA claim with prejudice because the plaintiffs failed to allege facts sufficient to support a cause of action. The court "recognize[d] that technology companies such as Samsung have significantly more information about their proprietary systems and software than everyday consumers, who may not be able to ascertain their inner workings without the aid of discovery." *G.T.*, 186 F.4th at 477. But that information asymmetry did not excuse the plaintiffs from meeting their "burden . . . to plausibly state a cause of action." *Id.* *G.T.* applies with equal force here. That "Apple's source recordings . . . remain in Apple's exclusive control," Opp. at 9, does not relieve them of their "burden . . . to plausibly state a cause of action," *G.T.*, 186 F.4th at 477.

Plaintiffs attempt to limit *G.T.* to its facts, arguing that the biometric data there was allegedly collected on devices and so there was no reason to "infer" that Samsung had "collect[ed]" the data itself, whereas here there are no devices at issue. Opp. at 9. That description of *G.T.* is incorrect: the plaintiffs there claimed that because they could back up their photos to Samsung's servers, "one could reasonably infer that the associated facial geometry data . . . [was] also backed up." 186 F.4th at 477. The Seventh Circuit rejected this theory because the plaintiffs did "not provide any plausible support." *Id.* Here, plaintiffs offer an even more attenuated theory: that because their recordings exist online, and because Apple has access to the internet, Apple must have used their recordings for training. Opp. at 6–8. Plaintiffs do "not provide any plausible support for this theory," so the complaint should be dismissed. *G.T.*, 186 F.4th at 477.

## IV. Plaintiffs' BIPA claims should be dismissed because they have not pleaded facts bringing Apple's conduct within the narrow ambit of the statute.

### A. Plaintiffs do not plausibly allege the creation of data subject to BIPA.

In support of their theory that Apple used their recordings to collect their biometric identifiers, plaintiffs (1) attach three research papers supposedly showing that Apple created voiceprints and (2) claim that those voiceprints were capable of identifying them because Apple had access to their metadata. Opp. at 15–17. Both arguments are wrong.

**1.** As for the creation of voiceprints, plaintiffs rely heavily on a paper Apple published about Personal Voice, an on-device tool that allows users "at risk of losing their ability to speak" to communicate using "synthesized voice[s]." Dkt. 36-2 at 2. The paper says Apple trains its models on certain recordings before deploying the ultimate product to Apple devices. *See id.* at 4. Plaintiffs say it is during this training that "Apple extracts and encodes" voiceprints. Opp. at 15. But the paper describes training as processing only "general voice information," not voiceprints. Dkt. 36-2 at 4. It also says Apple performed training using only the LibriTTS dataset of recordings, *id.*, and plaintiffs do not allege their recordings were in that dataset.

Plaintiffs also rely on two other papers—"Voice Trigger System for Siri," Dkt. 36-3, and "Improving on-device speaker verification using federated learning with privacy," Dkt. 36-4—to suggest that Apple creates voiceprints in the course of training its voice-synthesis technology. Opp. at 16 (citing Dkt. 36-3, 36-4). But those papers are not about Apple's voice-synthesis technology; they instead describe an Apple technology that allows users to control access to Siri technology using their voices (e.g., a user saying "Hey Siri" to wake her iPhone). Dkt. 36-3, 36-4. Plaintiffs concede this technology is part of a "separate system[]" and say they do "not offer[] [it] as proof that the synthesis models share [its] architecture." Opp. at 16. But plaintiffs necessarily ask this Court to *infer* that voice-synthesis technologies were developed in the same

way. The Court should decline their invitation. In a recent analogous case, the district court held the defendant's collection of biometric data for the purpose of identifying a person in a photograph did not also mean it collected the same information when it was merely trying to distinguish among faces in the photograph. *Hooks v. CloudSpotter Techs. Inc.*, 2026 WL 1045734, at *3 (N.D. Ill. Apr. 17, 2026). The same logic applies here. That Apple may have used certain information to develop one technology, for one purpose, does not give this Court a plausible basis to infer that it used that same information to develop a different technology (voice-synthesis products) for a different purpose. *See id.*

In an effort to rescue their claims, plaintiffs again point to *Clearview AI*. Opp. at 14. There, they say, this Court deemed sufficient the plaintiffs' allegations that the defendants had "extract[ed] . . . biometric measurements from public photographs," and because this case simply substitutes "voice recordings" for public photographs, it, too, should survive dismissal. *Id.* But in *Clearview*, the defendants "created a searchable database [of] biometric information and data that allow[ed] users to identify unknown individuals by uploading a photograph to the database." *Clearview AI*, 585 F. Supp. 3d at 1120. The fact that Clearview's technology could match the photos uploaded to those in the database led this Court to infer that the defendants had collected plaintiffs' biometric data. *See id.* No similar allegations exist here.

**2.** As for whether Apple could have linked their identities to their alleged voiceprints, plaintiffs again point to Apple Books, Apple Podcasts, and various broadcast archives, which they say contained metadata reflecting their identities. Opp. at 17. Citing *Javid v. M.A.C. Cosmetics, Inc.*, 2026 WL 1601454 (N.D. Ill. June 4, 2026), plaintiffs say Apple's access to this information is enough to show Apple was capable of determining their identities; they need not allege their voiceprints and metadata were "collected together." Opp. at 18. But *Javid* explains that in addition

to alleging access, plaintiffs must also allege a "clear preexisting relationship" between Apple and plaintiffs that "supports the inference that biometrics collected by the [defendant] could be used to identify" them. *Javid*, 2026 WL 1601454, at *6. In *Javid*, the relationship was between a customer (the plaintiff) and a commercial retailer (the defendant) with whom the customer had an account connecting her name to each purchase she made after providing her facial geometry data. *Id.* No similar relationship can exist here, where plaintiffs "are not the purchasers" of any Apple products, Opp. at 4, and do not allege they have any accounts with Apple, *see* Compl. ¶ 78.

**B. Plaintiffs fail to state any claims under BIPA sections 15(c)-(e).**

Plaintiffs say Apple sold their biometric data in violation of Section 15(c), transferred their biometric data to third parties in violation of Section 15(d), and failed to protect their data with reasonable care in violation of Section 15(e). Compl. ¶¶ 154, 161–62, 169–70. But the basis for all of these claims is the theory that plaintiffs' biometric data is "encoded" in Apple's voice-synthesis products, and that Apple violated the relevant provisions by selling, transferring, and failing to protect those *products*. Mot. at 22–24. That theory would be viable only if plaintiffs alleged their data is so integrated into the product that accessing the product is akin to accessing the data. *Id.* Because there are no such allegations here, Apple argued these claims should be dismissed. *Id.* Plaintiffs respond that consumers have access to plaintiffs' biometric data because Apple's voice-synthesis products reproduce plaintiffs' "vocal characteristics," such as "timbre" and "cadence," and that this is enough under this Court's decision in *Clearview AI*, 585 F. Supp. 3d at 1126. Opp. at 20, 22–23. But "voice characteristics . . . are not voiceprints." *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022). And plaintiffs concede that in *Clearview AI*, "customers paid to use biometric information through database searches"—i.e., the plaintiffs' data was so integrated into the product that customers had access to the data itself. Opp. at 20. The equivalent here would be a searchable database of voiceprints that includes plaintiffs'

voiceprints, but plaintiffs allege no such thing.

Unable to get around the caselaw on integration, plaintiffs latch onto language in *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2022 WL 252702 (N.D. Ill. Jan. 27, 2022), and *Moomaw v. GeoSnapShot PTY LTD*, 2025 WL 870319 (S.D. Ill. Mar. 20, 2024). Both of those courts sustained BIPA claims on the basis of allegations that the plaintiffs' biometric data was "necessary" to the defendant's business model. Opp. at 20 (quoting *Clearview*, 2022 WL 252702, at *4). But in those cases, unlike in this one, the defendants' bottom line depended on access to the underlying data in the form of the ability to find matches in a searchable database. In *Clearview*, the defendant retailer used a database to prevent losses by matching biometric data to people's images. *See* 2022 WL 252702, at *3. In *Moomaw*, the defendant gave customers access to biometric data in a database so they could search for pictures of themselves and purchase them on the defendant's website. *See* 2025 WL 870319, at *9. There are no similar allegations here.

## V. All of plaintiffs' remaining claims should be dismissed for other, independent reasons.

**Illinois Right of Publicity Act.** This claim should be dismissed for two reasons. First, plaintiffs have not plausibly alleged Apple used their voices in a manner that identified them to a reasonable audience. Mot. at 24–26. Plaintiffs say Apple reproduced their "vocal characteristics." Opp. at 23. But plaintiffs do not provide "a specific reason" why any of these vocal characteristics "would be distinctive to [them]." *Marchman v. Kovel-Fuller, LLC*, 2007 WL 9811116, at *3 (N.D. Ill. July 9, 2007). Nor do they allege that anyone heard Apple's outputs and identified them as the speakers. Second, plaintiffs have not plausibly alleged that Apple used their identities in a commercial transaction. Mot. at 26. Plaintiffs do not plausibly allege Apple used their identities to sell anything, so they seek leave to amend their complaint to allege that Apple "invites prospective customers to 'listen to previews of our digital voices' and links to full audiobooks" on its website. Opp. at 24, 30. Plaintiffs say the previews show Apple used their identities to sell its

narration products in violation of IRPA. *Id.* at 24. That plaintiffs are requesting leave to amend dooms the IRPA claim as pleaded, and leave to amend should be denied because plaintiffs concede they are "not" saying that any "particular preview reproduces a Plaintiff." *Id.* If plaintiffs are not identifiable in these previews (they are not), then their identities are not being used to sell anything in violation of IRPA. Mot. at 26.

**Illinois Consumer Fraud and Deceptive Business Practices Act.** Plaintiffs allege that Apple violated this statute by touting the training data used for its text models while remaining silent about its voice models. Compl. ¶ 192. Apple argued plaintiffs failed to state this fraud claim with the requisite particularity. Mot. at 28–29. Plaintiffs now disavow the text-training theory, characterizing paragraph 192 as mere "context," and advance a different one: Apple supposedly deceived them by failing to provide BIPA notices. Opp. at 27–28, 30. But plaintiffs cannot amend their complaint through an opposition brief, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), and their new theory is foreclosed because a plaintiff "cannot maintain" an ICFA claim if she "does not receive [a] communication" from the defendant. *De Bouse v. Bayer*, 235 Ill. 2d 544, 555, 922 N.E.2d 309, 316 (2009).

There is still another reason to dismiss the ICFA claim: to plead a claim, plaintiffs must allege they were acting like consumers, but they cannot do so here. Mot. at 27–28. Plaintiffs say they have pleaded a "consumer nexus" because Apple collects the biometric information of consumers, and plaintiffs allege Apple also collected their biometric information. Opp. at 26–27. This argument is wrong for two reasons. First, to be a consumer, a person must use Apple's voice products or buy its devices. *See Patel v. Zillow, Inc.*, 2018 WL 2096453, at *9 (N.D. Ill. May 7, 2018) (consumers were the "potential buyers" of real estate, not the "sell[ers]"). But plaintiffs say that they are "non-users" of those products, Compl. ¶ 75, and that they "are not the purchasers" of

any device, Opp. at 4. Second, plaintiffs allege they are different from consumers—that "Apple operates an extensive consent . . . infrastructure for . . . users" but "no equivalent infrastructure" for "non-users" like them. Compl. ¶¶ 43, 75.

**Illinois Uniform Deceptive Trade Practices Act.** The Court should dismiss this claim because plaintiffs have not pleaded it with particularity under Rule 9(b). Mot. at 29–30. Plaintiffs do not argue they have pleaded the claim with particularity; they instead argue only that they need not do so because they allege only "nonfraud" confusion—that listeners are confused about whether plaintiffs endorsed Apple's synthetic audio, not that Apple acted with any "intent to deceive." Opp. at 29. But that is not what plaintiffs allege in their complaint. Plaintiffs allege Apple protects user data but that it "deliberately withhold[s]" these same protections from non-users like plaintiffs and does not tell anyone about this practice. Compl. ¶¶ 52, 114, 198. A claim that the defendant "deliberately" withheld information is a fraud claim and must be pleaded with particularity. *See CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008). Plaintiffs also say in *ATC Healthcare Services, Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943 (N.D. Ill. 2016), the district court held a claim grounded in confusion need not be pleaded with particularity. Opp. at 29. But the court ultimately held it did not matter whether Rule 9(b) applied because the plaintiff's confusion claim did not satisfy even Rule 8. *ATC*, 192 F. Supp. 3d at 953 n.3. *ATC* further recognized that to state a claim, a plaintiff must allege the defendant said something about the plaintiff to the public. *Id.* at 952. Because plaintiffs allege only Apple's silence, the Court should dismiss the claim under plaintiffs' own authority, *ATC*. *See id.*

**Unjust enrichment.** The Court should dismiss this claim because they admit (at 30) that it depends on their BIPA and IRPA claims, which are not adequately pleaded. *See* Mot. at 30.

## CONCLUSION

The Court should dismiss plaintiffs' complaint without leave to amend.

Dated: October 13, 2026

Respectfully submitted,

By: *_____/s/ Lauren Goldman___*

Lauren Goldman
Michael Brandon (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

Diana M. Feinstein (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2000 Avenue of the Stars, Suite 1200N
Los Angeles, California 90067-4700
Telephone: 310.552.8500
Facsimile: 310.552.7000
dfeinstein@gibsondunn.com

Andrew Robb (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, California 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333
arobb@gibsondunn.com

Amanda J. Sterling (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.530.9500
asterling@gibsondunn.com

Andrew G. May
Roshni S. Vos
Neal, Gerber & Eisenberg LLP
225 W. Randolph Street, Suite 2800
Chicago, IL 60606
Telephone: 312.269.8000
Chicago, Illinois 60606
amay@nge.com
rvos@nge.com

*Counsel for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

Roshni S. Vos, an attorney, certifies that on October 13, 2026, she caused a copy of ***Defendant Apple Inc.'s Reply in Support of its Motion to Dismiss Plaintiffs' Complaint*** to be filed via this Court's CM/ECF System, which will send notice of this electronic filing to all counsel of record receiving electronic notification.

*/s/ Roshni S. Vos*